**IN THE UNTED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**STEPHEN D. HERTO,**

Petitioner,

v.                                              **Civil Action No. 5:17-CV-54**
                                                Judge Bailey

**JOHN T. MURPHY,** Acting Warden**,**

Respondent,

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On May 1, 2017, the *pro se* petitioner, Stephen D. Herto ("petitioner") filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. [Doc. 1].  Now pending before this Court are Respondent's Motion for Judgment on the Pleadings [Doc. 109][1], filed June 7, 2024, and Petitioner's Motion for Summary Judgments (sic) [Doc. 117], filed July 2, 2024.  Petitioner is challenging his 2013 conviction in the Circuit Court of Preston County, West Virginia.  The matter is now pending before the undersigned for a review and Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule of Prisoner Litigation Procedure ("LR PL P") 2.  For the reasons that follow, the undersigned recommends the petition be denied and dismissed.

---

[1] The Court notes that in an apparent typo, the Motion is titled "Respondent's for Judgment on the Pleadings."  As the intended title is obvious and referenced in both parties' briefing, the undersigned will refer to it as such throughout this Report.

## II.    FACTUAL AND PROCEDURAL HISTORY

**A. Petitioner's Conviction and Sentence in Preston County Circuit Court Case Number 13-F-65**

As summarized by the West Virginia Supreme Court of Appeals:

> In November of 2013, petitioner was indicted on thirteen counts: two counts of sexual abuse by a parent, custodian, or person in a position of trust; one count of use of obscene matter with intent to seduce a minor; and ten counts of soliciting a minor via computer.  In July of 2010, the victim, then sixteen years old, started treatment at petitioner's chiropractic clinic. The scheduled treatments were conducted three times per week, for three months.  During one of those visits, the victim's grandmother and petitioner began discussing the subject of horses.  To further communicate on the subject of horses, the victim gave petitioner her e-mail address.  In October of 2010, the victim started receiving several e-mails from petitioner per month in an attempt to solicit the victim into engaging in sexual acts. Petitioner also requested nude pictures of the victim via e-mail and he attempted to lure the victim out of her home to meet him.

*State of West Virginia v. Stephen H.*, No. 15-0801, (June 6, 2016 W.Va) (unpublished),

[Doc. 39-8 at 2–3].  Following trial, petitioner was found guilty of Count 1, sexual abuse

by a parent, custodian or person in a position of trust; *not guilty* on Count Four, the second

count for sexual abuse by a parent, custodian or person in a position of trust; guilty of

Counts 2–3, 5–9, and 11–13, the ten counts of soliciting a minor via computer; and guilty

of Count 10, use of obscene matter with intent to seduce a minor.   [Doc. 39-4 at 43].

Petitioner's sentences were summarized by the West Virginia Supreme Court of Appeals:

> Following the verdict, the circuit court sentenced petitioner to the following sentences: not less than two nor more than ten years of incarceration for counts two, three, five, six, and seven of the indictment for soliciting a minor via a computer, to run concurrently; not less than two nor more than ten years of incarceration for counts eight, nine, eleven, twelve, and thirteen, to run concurrently to each other, but consecutively to counts two, three, five, six, and seven; three years of incarceration for one count of use of obscene matter with intent to seduce a minor, to run concurrently with counts two, three, five, six, and seven for soliciting a minor via computer; and not less than ten nor more than twenty years of incarceration for two counts of sexual abuse by a parent, custodian, or person in a position of trust, to run

consecutively to all the other sentences.  However, the circuit court suspended petitioner's sentence for sexual abuse by a parent, guardian or person in a position of trust and placed him on probation for a period of five years.  Petitioner was also ordered to serve a ten year period of extended supervised release upon the expiration of all other sentences of imprisonment or parole.

*State of West Virginia v. Stephen H.*, No. 15-0801, (June 6, 2016 W.Va) (unpublished), [Doc. 39-8 at 3].  The undersigned notes, however, that petitioner filed a motion for reduction of sentence and that, after petitioner's appeal was concluded, the circuit court "reduced time for incarceration to two to ten years."  [Doc. 11-5 at 4].

### B.  Direct Appeal – Case Number 15-0801

Petitioner appealed his conviction and sentence *pro se* to the West Virginia Supreme Court of Appeals.  [Id.].  Notably, the WVSCA erroneously stated that petitioner "was found guilty on all thirteen counts" despite the not guilty verdict on Count 4.[2]  [Id. at 3].  Petitioner raised four assignments of error: ineffective assistance of counsel, alleging numerous grounds; unclear jury instructions, arguing the jury was not instructed that it must be shown the victim was under his "care;" failure of the court to suppress evidence; and failure to dismiss the case based on insufficient evidence of "care."  [Doc. 11-2 at 13–15].  On appeal, the WVSCA did not rule on the ineffective assistance claim, citing that it was "extremely rare" for the court to find ineffectiveness on direct appeal and that the record should be more fully developed through habeas corpus proceedings.  [Doc. 39-8 at 3].  On the issue of the denial of acquittal, the WVSCA found that "It is clear from the record that the evidence before the jury was more than sufficient for it to find him guilty on all charges."  [Doc. 39-8 at 5].  Likewise, as to the insufficient evidence claim, the court

---

[2] The WVSCA's error was apparently made in reliance on erroneous briefing made by a prosecuting attorney, who was later admonished for this error.  [Doc. 49-1].

found no error.  [Id. at 5–6].  Finally, regarding the issue of jury instructions, the court

found that the instructions, "reviewed as a whole," were sufficient.  [Id. at 7].

### C.  State Habeas Proceeding

As previously summarized, in Judge Bailey's April 4, 2024 Order:

> On October 5, 2016, petitioner filed a petition for habeas corpus in the
> Circuit Court of Preston County, West Virginia. [Doc. 93 at 2]. While his
> State habeas corpus petition was pending, petitioner was released on
> parole. [Id.]. As a result, the Circuit Court of Preston County dismissed the
> petitioner's state habeas corpus petition without adjudication because the
> Circuit Court of Preston County no longer had the authority to adjudicate
> the State habeas petition. [Id]. The petitioner filed an appeal with the
> WVSCA, which the affirmed the Circuit Court's decision.

[Doc. 96 at 2].

### D.  Federal Habeas Proceeding and Excusal of Exhaustion

On May 1, 2017, petitioner filed a petition in this Court pursuant to 28 U.S.C.

§ 2254.  [Doc. 1].  Along with his petition, petitioner filed a Motion to Stay, [Doc. 2],

seeking to stay this case in order for him to fully exhaust state remedies.  On May 16,

2017, petitioner then filed a Notice of Change of Address which indicated that he had

been released from incarceration.  [Doc. 9].  On November 17, 2019, Judge Stamp issued

a Memorandum Opinion and Order which found that although the WVSCA had dismissed

petitioner's appeal of his habeas proceeding due to petitioner's release, some of

petitioner's claims were still not exhausted because he had the available remedy of

pursuing a writ of coram nobis, and the petition was thus a "mixed" petition of exhausted

and unexhausted claims.  [Doc. 52].  The Order directed petitioner to notify the Court

whether he wished to pursue a writ of coram nobis or voluntarily withdraw his

unexhausted claims.  [Id. at 9].  Following an interlocutory appeal, on April 23, 2020,

petitioner filed a Notice of Coram Nobis Filing, [Doc. 70], and began providing the court status updates of his coram nobis proceedings.

Nearly four years later, on January 26, 2024, petitioner filed a Motion for Exception to Exhaustion, arguing that exhaustion should be excused due to the inordinate delay in the state proceedings.  [Doc. 93].  This Court found that exhaustion should be excused and granted the Motion.  [Doc. 96].

### E.  Amended § 2254 Petition

In his amended petition, petitioner raises five grounds for relief.  First, in Ground One, petitioner alleges that his trial counsel was ineffective.  Petitioner includes a number of alleged failures by counsel.  First, that counsel failed to present any jury instruction and failed to object to the trial court's instructions, which did not include petitioner's theory of the case on the solicitation charges.  Second, that counsel "failed to use overwhelming evidence that the victim was not in the defendant's 'care.'"  [Doc. 106-1 at 2].  Third, that counsel was unaware of the sexual exploitation charge charged in Count One.  Fourth, that counsel failed to move for acquittal.  Fifth, that defense counsel did not file any post-trial motions.  Sixth, that counsel did not object to Count One being included in the jury instructions despite believing it was not charged in the indictment.  Seventh, that defense counsel failed to object to "surrogate testimony" which denied petitioner the right to confront the witness.  Eighth, that defense counsel "suppressed the best evidence" that petitioner was not at a hotel at the time of an email sent charged in Count Ten.  Ninth, that defense counsel failed to prepare for a pre-trial suppression hearing and "missed critical evidence."  [Id.].  Finally, that defense counsel's cumulative errors prejudiced petitioner.

Second, in Ground Two, petitioner argues that he was denied jury instructions which included his theory of the case.  He argues the jury instructions were required to include the elements of "person in position of trust" and "care, custody or control" and that without these he admitted to every other element of the charge.

Third, in Ground Three, petitioner argues he was convicted on insufficient evidence.  Petitioner cites a number of matters which he contends were not supported by any evidence, including that there was no evidence of an "attempt," that there was no evidence of the element of "care, custody, or control," that there was no evidence of sexual exploitation, and that there was no evidence he was physically present with the victim.

Fourth, in Ground Four, petitioner argues he was denied the opportunity to confront the witnesses against him because the lead investigator testified as a "surrogate" from reports and investigations performed by other officers.

Finally, in Ground Five, petitioner claims he was convicted of Count One despite such count not being charged in the indictment.

**F.  The Instant Motions**

On June 7, 2024, respondent filed Respondent's Motion for Judgment on the Pleadings, along with a memorandum in support.  [Doc. 109 & 110].  In his memorandum in support, respondent argues that, as to the exhausted claims, the WVSCA decision on direct appeal is not contrary to or an unreasonable application of federal law; that petitioner has not stated a cognizable claim on his "confrontation clause" claim; that sexual exploitation was included in the charge for Counts 1 and 4 of the Indictment; and that petitioner has not met his burden regarding his ineffective assistance of counsel

claims.  On July 2, 2024, petitioner filed a response to the Motion, [Doc. 116], and on July 16, 2024, respondent filed a reply, [Doc. 118].

On July 2, 2024, petitioner also filed Petitioner's Motion for Summary Judgment. [Doc. 117].  Petitioner argues that he should be granted summary judgment for Grounds 3-1 and 5 of his petition, which both attack Count 1 of his indictment.  [Doc. 117 at 1–2]. Specifically, he argues that emails alone are insufficient to constitute an attempt and that the trial court has already found that the indictment did not charge petitioner with sexual exploitation.  On July 23, 2024, respondent filed a response. [Doc. 119].  Any reply by petitioner was due within fourteen days; to date, no reply has been filed.  *See* LR PL P 11.

## III.    LEGAL STANDARDS

### A.  Petitions for Habeas Corpus Under 28 U.S.C. § 2254

Under 28 U.S.C. § 2254, a district court must entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); *see also* ***Williams v. Taylor***, 529 U.S. 362 (2000).

A petitioner can only seek § 2254 relief if he has exhausted the remedies available in state court, the corrective process is not available in state court, or the state process is ineffective to protect the petitioner. 28 U.S.C. § 2254(b).

## B. Motions for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) seeks to dispose of a case on the basis of the underlying substantive merits of the parties' claims as they are revealed in the formal pleadings. *See* 5C Wright & Miller, Federal Practice and Procedure Civil 3d § 1367 (2007). "In analyzing a party's motion for judgment on the pleadings pursuant to Federal Rule 12(c), the Fourth Circuit has indicated that the applicable standard is the same as a motion to dismiss pursuant to Federal Rule 12(b)(6), noting that the 'distinction is one without a difference.'" **Hurley v. Wayne Cty. Bd. of Educ.**, 2017 WL 2454325, at *3 (S.D. W.Va. June 6, 2017) (Chambers, C.J.) (quoting **Burbach Broad. Co. of Del. v. Elkins Radio Corp.**, 278 F.3d 401, 405–06 (4th Cir. 2002)).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." **Republican Party of N.C. v. Martin**, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. **Mylan Labs, Inc. v. Matkari**, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555 (2007) (quoting ***Conley v. Gibson***, 355 U.S. 41, 47 (1957)). In ***Twombly***, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." ***Conley***, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted), to one that is "plausible on its face," [*Id*. at 570], rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." ***Bass v. E.I. DuPont de Nemours & Co.***, 324 F.3d 761, 765 (4th Cir. 2003) (citing ***Dickson v. Microsoft Corp.***, 309 F.3d 193, 213 (4th Cir. 2002); ***Iodice v. United States***, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in ***Ashcroft v. Iqbal***, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id*.

### C. Motions for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249 (citations omitted).

Finally, this Court notes that pro se allegations are held to a less stringent standard than those drafted by lawyers and must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978).

## IV.    ANALYSIS

The privilege of the writ of habeas corpus is recognized in Article I, Section 9 the United States Constitution. Petitions for writs of habeas corpus filed in the federal courts are governed by 28 U.S.C. § 2241 *et seq*. Pursuant to 28 U.S.C. § 2254(b)(1):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

In *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), the Supreme Court held that to, "provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." Accordingly, a petition for writ of habeas corpus on behalf of a prisoner in State custody should not be entertained by a federal court unless the petitioner has first exhausted his state remedies.  Principles of comity dictate that the state must first be afforded a full and fair opportunity to pass upon and correct the alleged violation of its prisoners' federal rights.  *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Woodfolk v. Maynard*, 857 F.3d 531 (4th Cir. 2017).

Here, the Court has excused exhaustion on petitioner's unexhausted claims due to the inordinate delay in petitioner's Coram Nobis proceedings.  [Doc. 96].  For the claims

exhausted by direct appeal, Ground 2, petitioner's claim regarding jury instructions, and Ground 3, petitioner's claim that he was convicted on insufficient evidence, the Court must still address those claims by determining whether the adjudication of those claims in state court "was contrary to, or involved an unreasonable application of clearly established Federal law." The undersigned agrees with the parties that the remaining claims are subject to de novo review. *See* ***Gordon v. Braxton***, 780 F.3d 196, 202 (4th Cir. 2015) ("the state court's decision must qualify as an 'adjudicat[ion] on the merits' to trigger AEDPA deference.") (quoting § 2254(d)); ***Weeks v. Angelone***, 176 F.3d 249, 258 (4th Cir. 1999), aff'd, 528 U.S. 225 (2000) ("When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is de novo.").

### A. The WVSCA's determination that the jury instructions, reviewed as a whole, were sufficient, is not contrary to or an unreasonable application of federal law.[3]

As this Court has previously noted, the petitioner has exhausted his claims regarding jury instructions by virtue of his direct appeal. [Doc. 52 at 7]. Petitioner argues, in Ground Two, that the trial court violated his rights by neglecting to include his theory of the case in the jury instructions. He contends that "[t]he jury instruction must include the elements of 'person in a position of trust' and 'care, custody or control' to distinguish the petitioner's theory of the case and why he went to trial." [Doc. 106 at 9]. The trial court provided instruction on the element of "a person in a position of trust" in its instruction

---

[3] Because of the overlap between some of alleged grounds and petitioner's bases for alleged ineffective assistance of counsel, the undersigned will address the arguments in the order presented in the Motion for Judgment on the Pleadings, rather than the Amended petition.

relating to Counts One and Four.  [Doc. 39-4 at 6–7].  However, petitioner argues the trial court failed to include this instruction for his theory of the case as to Counts Two, Three, Five through Nine, and Eleven through Thirteen, i.e., the charges for soliciting a minor via computer.  [Doc. 106 at 8–9].  Instructing the jury on these charges, the trial court stated:

> Soliciting a minor via computer is committed when any person over the age of 18 knowingly uses a computer to solicit, entice, seduce, or lure or attempt to solicit, entice, seduce, or lure a minor known or believed to be at least four years younger than the person using the computer or a person he or she believed to be such a minor to commit any illegal act prescribed by certain provisions by the West Virginia Code, including the act of sexual abuse by a parent, guardian, custodian or person in a position of trust to a child **as previously defined in this charge**.

[Doc. 39-4 at 9] (emphasis added).  Thus, the trial court did not separately redefine "person in a position of trust" or "care, custody, or control" and instead referred back to its earlier definition.  Because the trial court defined the elements of sexual abuse by a parent, custodian, or person in a position of trust, and because the jury instructions stated that the soliciting charges required the intent to commit sexual abuse by a parent, custodian, or person in a position of trust, the West Virginia Supreme Court of Appeals found that the jury instructions were sufficient when "reviewed as a whole.  ***State of West Virginia v. Stephen H.***, No. 15-0801, (June 6, 2016 W.Va) (unpublished), [Doc. 39-8 at 7], (citing ***State v. Guthrie***, 194 W.Va. 657, 671 (1995)).

The undersigned concludes that this decision was not contrary to, or involving an unreasonable application of, clearly established Federal law.  As pointed out by respondent, the "only question" in a federal habeas review of the state court's jury instructions, is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  ***Estelle v. McGuire***, 502 U.S. 62, 72 (1991) (citing ***Cupp v. Naughten***, 414 U.S. 141, 147 (1973)).  Further, "[i]t is well established

that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id*. at 62 (citing ***Cupp*** 414 U.S. at 147)).  Clearly, taking the instructions as a whole, the trial court instructed the jury that for the solicitation charges, it must find that the defendant was attempting solicit a minor to commit an illegal act "prescribed by certain provisions of the West Virginia Code, including the illegal act of sexual abuse by a parent, guardian custodian or person in a position of trust to a child as previously defined in this charge."  [Doc. 39-4 at 9].  The trial court had already defined the elements of that crime and the undersigned finds that the failure to re-define the same element here did not "so infect[] the entire trial that the resulting conviction violates due process."

In his response to the Motion for Judgment on the Pleadings, petitioner contends that his argument has been misstated on this point:

> The altered argument adopted word for word by the WVSCA completely ignores the defendant's actual theory of the defense argument.  The defendant never asked for more definitions.  The WVSCA has never addressed the defendant's actual argument.  The WVSCA cited ***State v. Guthrie***, 194 W. Va. 657, 461 S.E.2d 163 (1995), specifically "the court was not required to give a further instruction of the same element as they relate to a different charge."[Doc. 39-8 at 7]  But, the Petitioner did not request a duplicative instruction.  [Doc. 110 at 15]  The defendant's position by counsel was that the elements themselves be included in the solicitation charges to the jury, in agreement with the defense's theory of the case.  The additional elements of "person in a position of trust" and "care, custody or control" must be included in the solicitation charge because they are not part of the solicitation statute.

[Doc. 116 at 10–11].  Petitioner's argument is that the jury was in fact required to find he was a "person in a position of trust" *at the time* of the solicitation.  [Id. at 11].  As set forth above, the instructions on the solicitation charges included that the jury must find that the defendant "use[d] a computer to solicit, entice, seduce or lure or attempt to solicit, entice,

seduce, or lure" the victim "to commit the illegal act of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child in violation of West Virginia Code 61-8d-5." [Doc. 39-4 at 9]. The elements required were clearly set forth in the jury instruction, and petitioner's attempt to insert an additional element is unsupported. A solicitation necessarily occurs at a different time than the crime being solicited.

The West Virginia Supreme Court of Appeals' decision on this issue is not contrary to or involving an unreasonable application of clearly established federal law, and this ground should be dismissed.

**B. Petitioner cannot demonstrate he was convicted on insufficient evidence, and to the extent the WVSCA has ruled on this issue, its findings are not "objectively unreasonable."**

In Ground Three, petitioner claims he was convicted on insufficient evidence. Petitioner asserts that sending electronic communications, alone, cannot be considered an "attempt" and, therefore, there was no evidence of an "attempt" as to Count 1. [Doc. 106 at 11]. Further, he asserts that there was no evidence presented on the element of "care, custody, or control" as to Counts 1, 5-9, and 11-13. [Doc. 106-1 at 3]. He further asserts that there was no evidence of sexual exploitation for Count 1. [Id.]. Finally, he asserts that there was no evidence "of the defendant and victim being physically present with one another" as to Count 1. [Id.]. He argues that "[a]ny rational observer can easily ascertain that for sexual abuse to even be attempted, it is implied that the parties must at least be physically in the same location, not different states, as in this case." [Id.].

In challenging the sufficiency of the evidence to support his conviction, petitioner faces "two layers of judicial deference:"

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

Although the West Virginia Supreme Court of Appeals rejected petitioner's arguments, petitioner contends that the ruling is unreliable as it relied on misinformation, mistakenly believing that petitioner had been convicted on Count 4.  [Doc. 116 at 12]. Turning first to petitioner's argument that emails alone are insufficient and that he must have been physically present with the victim, the WVSCA rejected petitioner's argument "that the statute requires that he and the victim share the same physical space to sustain such a conviction [under § 61-8D-5]."  [Doc. 39-8 at 8].

> Contrary to petitioner's argument, *there is no requirement in the statute that the victim be physically harmed*.  Petitioner misconstrues our ruling in *State v. George K.*, 233 W.Va. 698, 760 S.E. 2d 512 (2014), to support his notion that physical harm to the victim is a component of the offense of sexual abuse by a parent, guardian, custodian, or person of trust.  Moreover, the evidence established that petitioner sexually abused the victim in person, rendering his argument meritless.

[Doc. 39-8 at 8] (emphasis added).  Thus, although the Supreme Court mistakenly believed petitioner had been convicted of Count 4, it is clear their ruling was that this was superfluous.  The undersigned does not agree that the above ruling was "based on the fabricated guilt of Count 4."  [Doc. 116 at 12].  Nothing in the text of § 61-8D-5 leads the

undersigned to find that physical presence is a requirement of the statute, and the undersigned finds that the Supreme Court's decision is not "objectively unreasonable."

Next, petitioner contends that there is nothing in the record showing the element of "care, custody or control."  [Doc. 106-1 at 3].  He contends that although the indictment charged Count 1 as relating to the period between October 5, 2010, and April 5, 2011, nothing in the record shows the victim was in petitioner's care after October 12, 2010.  [Id.].  Likewise, he contends that Counts 5–9 and 11–13 all occurred after October 12, 2010, and that there was no evidence of "care, custody, or control" during that time.  [Id.].  Unlike the other "insufficient evidence" arguments, the parties agree that this specific argument was not ruled upon by the WVSCA.  In the memorandum in support of the Motion for Judgment on the Pleadings, respondent argues that petitioner's relationship to the victim was solely that of a chiropractor to his child patient.  [Doc. 110 at 20].  Respondent argues that his professional duties as a chiropractor included "continuing obligations to patients, such as maintaining patient records.  The relationship did not dissolve because her next appointment had not yet been scheduled."  [Id].

In response, petitioner argues that because the victim testified that she would not return to the petitioner for an appointment after being groped, that she was therefore no longer in the "care" of petitioner.  [Doc. 116 at 15].  He further points out that because the victim's mother testified that petitioner "released" the victim at the end of the October 12, 2010 appointment, that this served as a formal end to his "care" of the victim.  [Id.].

Although the undersigned agrees with the parties that the WVSCA decision did not reach this issue and this Court must review the claim de novo, the Court must still defer to the factual findings of the jury unless no rational trier of fact could have agreed with the

jury.  At trial, both the victim and Lieutenant Swiger's testimonies included testimony showing that the victim was petitioner's patient, and it is undisputed that a doctor-patient relationship existed for some of the time period in question.  However, petitioner argues that any such relationship which would establish the basis for "care, custody or control" ended on the date of the victim's last appointment with petitioner.  During the trial, petitioner's testimony included that he sent email from his office email during the period after the October 12, 2010 appointment.  [Doc. 39-3 at 89–90].  Cross examination continued:

> Q.    Do you have an understanding about your legal and ethical responsibilities as a doctor for your patients?
>
> A.    Sure.
>
> Q.    And you think that ends the minute they walk out your door every time for a treatment?
>
> A.    You asked me if I was caring for her while she was outside the office. I can't care for her there.
>
> Q.    Actually the question I asked you was do you have a doctor/patient relationship.  I haven't gotten to the caring part yet.  Were you in that relationship as a doctor and patient during this overall time period or is it your testimony that the relationship only lasts for the limited amount of time she is in your office?
>
> A.    You mean from July to October when she was a patient? I mean, yes, she's a patient of my office.  If she called me up and said, hey, can you help me with such and such, I would, I mean, yes, sir.  I wouldn't say she wasn't a patient of mine while she was a patient of mine.  If you're asking if she was a patient of mine after she was released from care? I don't think so.
>
> . . .
>
> Q.    So this exhibit, Defendant's Exhibit Five from October 13th, you acknowledge that this doesn't say anything about releasing her or otherwise terminating your relationship with her.  Doesn't say anything about that.

A.      Not, it does not.

[Doc. 39-3 at 90–92].  A reasonable juror could have concluded that, as the respondent argues, the professional relationship did not dissolve simply because the victim had not scheduled another appointment.

Finally, petitioner asserts that there is no evidence in the record of sexual exploitation; specifically, he contends that the only evidence for guilt was "an alleged request for a nude picture."  [Doc. 106-1 at 3].  He further points to his contention that the trial court later concluded that sexual exploitation was not charged in Count 1 of the indictment.  [Id].  To the extent petitioner contends there was a deficiency in the language of the indictment, this claim has no bearing on the sufficiency of the evidence, and the undersigned has addressed petitioner's argument concerning the indictment in Ground Five below.  In his response to the Motion for Judgment on the Pleadings, petitioner emphasizes that he never requested a "nude" picture and that he simply asked for a picture.  [Doc. 116 at 13–14].  The record reflects that the State's Exhibit 4 includes a set of emails in which on October 5, 2010, petitioner asked "are u naked [victim]?" to which the victim replied "oh yeah? ha. who is this?" to which petitioner replied, "send me a pic," sent approximately seven minutes after the initial question.  [Doc. 39-3 at 103].  The jury could have concluded that this was a request for a nude picture, and the undersigned does not find that "no rational trier of fact could have agreed."

**C. Petitioner cannot demonstrate any violation of the confrontation clause.**

In Ground Four, petitioner argues he was denied the right to confront the witness regarding Count 10 because the lead investigator testified as to reports and investigations performed by other officers.  [Doc. 106-1 at 4].  The Sixth Amendment provides that "[i]In

all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI. "The Confrontation Clause commands that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 37 (2004).

Here, petitioner contends his Sixth Amendment right was violated when Sergeant Swiger's testimony included testimony about investigations conducted by another officer, Sergeant McCord, as well as by a computer forensic analyst. *See* [Doc. 116 at 18–19; Doc. 94-3 at 40–45].  Specifically, Sergeant Swiger testified that:

> A.     Yes, I have nothing to say that his computer sent that.  I know that email was sent from AC_Rich account that Dr. Herto has admitted to sending - - - and I know this email, we haven't talked about this, but I traced this email back to the Mardi Gras Casino in Cross Lanes, West Virginia.  I know the email was sent from there on a specific date in January 13th, 2011. **Through my investigation I was able to confirm that Dr. Herto was a guest at the hotel on the dates that these emails were sent.** Can I say he sent them?  I can't absolutely say that.

[Doc. 39-3 at 61] (emphasis added).   Thus, petitioner contends Swiger's testimony violated the confrontation clause because there was no testimony from the officers who conducted the investigation Swiger referred to.   Respondent argues that "Lt. Swiger merely testified that he confirmed through his investigation that Petitioner was a hotel guest on certain dates.  Lt. Swiger was the lead investigator of this matter and would have reviewed multiple documents and reports as part of his investigation.  His testimony does not violate the confrontation clause as he stated that he confirmed information provided by others as part of his own investigation."  [Doc. 118 at 7].  The undersigned agrees.

In petitioner's Memorandum in Support of Application for Writ of Coram Nobis, petitioner also refers to a signed report titled "Supplemental Action Taken."  [Doc. 94-3 at 43].  Petitioner argues that this report was testimonial in nature and thus violated the

confrontation clause.  Petitioner cites to **Bullcoming v. New Mexico**, 564 U.S. 647, 664 (2011), for the proposition that "A document created solely for an 'evidentiary purpose,' Melendez–Diaz clarified, made in aid of a police investigation, ranks as testimonial. 557 U.S., at 311, 129 S.Ct., at 2532.", see [Doc. 94-3 at 44].  The report in question, which can be found at [Doc. 116-6], is a report or portion of a report outlining the police investigation in this case that occurred at Mardi Gras Casino & Resort in Cross Lanes, West Virginia.  But the Court need not determine whether this report is "testimonial" because it was not introduced as evidence.  Petitioner has not directed the Court to any testimony or evidence which violated the confrontation clause and this ground should be dismissed.

### D. The undersigned finds no constitutional error from any deficiency in Count 1 of the Indictment.

In Ground Five, petitioner claims he was charged and convicted of a crime not in the indictment.  Specifically, he alleges that the jury instructions for Count One included a charge for sexual exploitation despite not being included in the indictment.  [Doc. 106-1 at 1].  He states that this was not discovered until the trial court issued an order revealing that the conviction proceeded to the jury despite not being included in the indictment.

The Indictment lists "Count 1" as "Sexual abuse by a Parent, Guardian, Custodian, or Person In a Position of Trust," under W.Va. Code § 61-8D-5, and alleges that petitioner committed the felony crime of "Sexual Abuse by a Person in a Position of Trust."  [Doc. 39-1 at 2]. The indictment specifically alleges that petitioner "engaged in or attempted to engage *in sexual exploitation* of, or in sexual intercourse, sexual intrusion or sexual contact with" a child under his care.  [Id.] (emphasis added).

The jury instructions relating to this Count show that the judge instructed the jury that

> Sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child is committed when any parent, guardian, custodian, or other person in position of trust in relation to a child under his or her care, custody, or control shall engage in or attempt to engage in sexual exploitation of or in sexual intercourse or intrusion or sexual contact with a child under his care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such contact.

[Doc. 39-4 at 6].  As a part of the instructions on these counts, the judge further provided a definition of "sexual exploitation."  [Id. at 7].  Thus, it appears that the indictment included the same charge described in the jury instructions, and that the indictment included "sexual exploitation."

However, petitioner contends that "The presiding trial judge has found post-trial after reviewing the indictment during the State Habeas Corpus petition that 'In fact, Count 1 of the Indictment did not charge Petitioner Herto with sexual exploitation.' [Doc. 11-5 at 15] Here the senior status judge with well over 30 years on the bench made a conclusive ruling."  [Doc.116 at 19].  A review of the cited order shows that the court found the following:

> Sexual exploitation, as well as sexual intercourse and sexual contact, were all defined in the Judge's Charge to the Jury.  (*See id*. at 12-13) The jury did not necessarily have to find that Petitioner Herto attempted to engage in sexual exploitation with the victim; instead, it could have found that Petitioner Herto attempted to engage in sexual intercourse or sexual contact with the victim.  In fact, Count 1 of the Indictment did not charge Petitioner Herto with sexual exploitation.  It specifically stated that Herto "used a computer to send multiple e-mails to [the victim], a 16 year old child who was his patient, soliciting her to engage in *sexual intercourse and sexual contact* with him and provide him with a naked picture of her . . . ."
> (Indictment, Count 1, Case No. 13-F-65 (emphasis added).)

> Accordingly, because Petitioner's assertions have been fully and finally adjudicated by the Supreme Court of Appeals of West Virginia on his direct appeal, and because Petitioner misinterprets the necessary elements to convict him of sexual abuse by a person in a position of trust as charged in Count 1 of the Indictment in his underlying criminal case, the Court finds and concludes that the assertion contained in Ground Three, Paragraph 18 of the Amended Petition for Writ of Habeas Corpus should be summarily dismissed.

[Doc. 11-5 at 16].  Read in context, the habeas court found that petitioner's argument that "there is no evidence of sexual exploitation in Count 1," [Id. at 15], was a misinterpretation of the evidence needed to sustain a conviction, pointing out that the indictment described soliciting to engage in sexual intercourse and sexual contact.  The undersigned does not believe that a reasonable reading of the April 11, 2017 Order is that the court determined the indictment was deficient.[4]

Regardless, because this claim was not fully exhausted, and exhaustion was excused by this Court, the claim is subject to de novo review.  As set forth above, the indictment unambiguously alleges in Count 1 that petitioner "unlawfully and feloniously engaged in or attempted to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with" a child under his care.   [Doc. 39-1 at 2]. Petitioner's argument is without merit and should be dismissed.  In the alternative, if the district court determines that petitioner is correct that the April 11, 2017 Order constitutes "a determination of a factual issue made by a State court" that sexual exploitation was not charged in the indictment, the undersigned finds that the respondent has met the burden

---

[4] The undersigned notes however, that the trial transcript does include that at the time of closing arguments it appears the court may have believed that "sexual exploitation" was mistakenly included in the jury instructions.  [Doc. 39-4 at 35].

of rebutting the presumption of correctness "by clear and convincing evidence" as such a factual determination is clearly at odds with the plain text of the indictment.

### E. Ineffective Assistance of Counsel

In Ground One, petitioner argues that his trial counsel was ineffective, providing, as set forth above, ten alleged failures which he argues constitute ineffective assistance of counsel.   Criminal defendants have a Sixth Amendment right to effective legal assistance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: first, he must show both that counsel's performance fell below an objective standard of reasonableness and, second, that he was prejudiced by counsel's alleged deficient performance.  *Id*. at 669.

When considering the performance prong of *Strickland*, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*. at 689; *see also Gray v. Branker*, 529 F.3d 220, 228–29 (4th Cir. 2008). This first prong requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688).  The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689.  When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and

tactical decisions that counsel faced." ***Bunch v. Thompson***, 949 F.2d 1354, 1363 (4th Cir.1991).

To satisfy the prejudice prong of ***Strickland***, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. ***Id***. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id***. This second prong requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. ***Strickland***, 466 U.S. at 687. If it is clear the petitioner has failed to satisfy either prong of the ***Strickland*** standard, a court need not inquire into whether he satisfied the other.

This ground has not been fully exhausted through state remedies, and the parties agree that it is subject to de novo review. [Doc. 110 at 27; 116 at 22].

### 1. The jury instructions were proper and defense counsel was not ineffective for failing to introduce alternate instructions.

First, petitioner argues his counsel was ineffective for failing to present any jury instructions or to object to the jury instructions for the solicitation charges. [Doc. 106-1 at 2 ¶ 1]. Petitioner points the Court to his earlier Memorandum in Support of Application for Writ of Coram Nobis [Doc. 94-3] for his proposed instructions. [Doc. 116 at 22]. There, petitioner contends that his counsel should have ensured that the instructions pertaining to the solicitation charges included the element of "care, custody, or control." [Doc. 94-3 at 11]. This is simply a re-framing of his argument raised in Ground Two and fails for the same reason. Petitioner's theory is that the victim was no longer in his "care, custody, or control" at the time of these charges, that he was therefore not a "person in a position of trust" and that the jury instructions should have included these points in the solicitation

charges because they were soliciting a crime which included those elements.  As set forth above the West Virginia Supreme Court of Appeals found that the jury instructions were sufficient when "reviewed as a whole," and the undersigned finds that the decision was not contrary to or involving an unreasonable application of clearly established federal law.

The undersigned sees no reason to distinguish this issue when approached as an ineffective assistance claim—petitioner is unable to show either prong of *Strickland*. Because the West Virginia Supreme Court of Appeals found the jury instructions were sufficient, petitioner is unable to show that his counsel was ineffective for failing to provide alternative instructions, nor can he show prejudice because he cannot show either that the trial court would have accepted defense counsel's proposed instructions or that such instructions would have had any impact on the outcome of the case.

### 2. Petitioner cannot show defense counsel's performance was deficient in presenting evidence related to "care, custody, or control."

Next, petitioner argues his counsel was ineffective by failing to use "overwhelming evidence" that the victim was not in defendant's care.  [Doc. 106-1 at 2 ¶ 2].  He alleges that defense counsel told him he did not hear the victim say, "I found someone else" and that counsel should have argued this point in his closing argument.  [Id.].  Defense counsel's closing argument raised the issue that the jury must find "care, custody or control" and argued that "person in a position of trust" means "at the time, as does 'care, custody or control,' that any act of sexual misconduct or attempt to do so is occurring." [Doc. 39-4 at 25].  Although focused around the language of "person in a position of trust," in addressing the solicitation counts, defense counsel continued to argue that this relationship no longer existed at the time of the conduct:

26

> The State would ask you to accept the proposition that he continues to be a person in a position of trust to [victim] after the 13th of October. Why? Because she gets some mass emailing that's part of a, who knows, a business PR program, a mass Christmas card. This is the only time in this presentation I'll use the word we've reached a level of absurdity here with this case.
>
> We're not a person in a position of trust by any interpretation whatsoever after the 13th. He is clearly not guilty of this crime beyond that date. These Counts require a different analysis. At the least, she is his patient, she visits his chiropractic office a number of times, and she is still seeing him off and on during the time period that these Counts occur.

[Doc. 39-4 at 30–31]. Although with the benefit of hindsight, defense counsel might have focused more on the alleged end of the doctor-patient relationship or more emphasized the victim's statement that she had "found somebody else," the undersigned finds that petitioner has not shown that counsel's arguments fell outside the "wide range of reasonable professional assistance." Further, given that the "overwhelming evidence" petitioner points to was part of the testimony the jury heard, the undersigned finds that petitioner cannot demonstrate he was prejudiced by the lack of emphasis in defense counsel's closing argument.

### 3. Petitioner is able to meet the performance prong but cannot meet the prejudice prong of *Strickland* as to defense counsel's handling of Count 1 and the inclusion of "sexual exploitation."

Next, petitioner argues that his counsel was ineffective because he was not aware petitioner was being charged with sexual exploitation and failed to present a defense for the sexual exploitation charge in Count 1. [Doc. 106-1 at 2 ¶ 3]. In a later claim, petitioner argues that sexual exploitation was not charged in the indictment. [Id. at 1]. As set forth below, the indictment unambiguously includes sexual exploitation as part of the charge in Count 1. Despite this, it appears that in his closing argument, defense counsel believed Count 1 did not relate to sexual exploitation:

What he's accused of in this count, Count One, is he is accused of using a computer to send multiple emails to [the victim], 16-year-old child who was his patient, soliciting her to engage in sexual intercourse and sexual contact with him and provide him a naked picture of her.  So he is accused of sending a number of emails between those dates.

And although the statute says "To engage or attempt to engage in sexual exploitation, intercourse, or contact, the actual indictment reads that he is attempting to engage in sexual intercourse or sexual contact by sending these emails.

[Doc. 39-4 at 24].  Likewise, during the prosecutions closing argument, defense counsel raised an objection related to sexual exploitation:

THE COURT:        This objection, was it caused by something he just said to the jury?

MR. DYER:        He's trying to explain to them that he can be guilty of sexual exploitation, but that's not the indictment and it's not what's been prosecuted in this case.

MR. SNYDER:        Yes, it is.

THE COURT:        I'm gonna let it go.  I'm not going to make a statement that this has been waived which I'm sure is why you wanted to come to the bench.  The reason now - - -

MR. DYER:        I would never do that.

THE COURT:        I know, and I'm not sure exactly how this plays out, but I would tend to caution Mr. Snyder to be careful.

MR. DYER:        I'm just going through the charge and what it says.

THE COURT:        We've reached this point and we can't change the jury charge, we can't change anything, so we've got to go on.

[Doc. 39-4 at 35].  Thus, it appears that defense counsel believed Count One pertained only to attempting to engage in sexual intercourse or sexual contact.

Petitioner argues that defense counsel thus presented "no defense" to this count and that the Court should presume that the adversary process was unreliable, citing

*Untied States v. Cronic*, 466 U.S. 648, 659 (1984).  In *Cronic*, the Supreme Court noted

that there are some "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658.  Such circumstances can justify a presumption of ineffectiveness without inquiry into counsel's actual performance at trial. *Id*. at 661–2.  "This is an extremely high showing for a criminal defendant to make and, in *Cronic* itself, the Court held that although trial counsel in Cronic's mail fraud prosecution was given only 25 days to prepare for trial, counsel was inexperienced in criminal matters, the charges against Cronic were complex, and that some witnesses were not easily accessible, this set of events did not constitute a Sixth Amendment violation absent a showing of actual ineffectiveness." *Brown v. French*, 147 F.3d 307, 313 (4th Cir. 1998).  For example, the presumption of prejudice is appropriate when "defendant's counsel is asleep during a *substantial* portion of the defendant's trial." *United States v. Ragin*, 820 F.3d 609, 619 (4th Cir. 2016).

Here, defense counsel appears to have misunderstood the scope of the charge in Count 1 of the indictment.  The undersigned finds that this falls below the objective standard of reasonableness and meets the performance prong of *Strickland*.  However, this is far short of the "extremely high showing" necessary to apply *Cronic*'s presumption of prejudice. *See Glebe v. Frost*, 574 U.S. 21, 23 (2014) ("Most constitutional mistakes call for reversal only if the government cannot demonstrate harmlessness.").  Thus, petitioner is still required to demonstrate prejudice under *Strickland*.

Contrary to petitioner's claim, defense counsel did not fail to present a defense to Count 1.  As part of his defense of counts including Count 1, defense counsel presented evidence and argument that the victim had led petitioner to believe she was 18, *see* [Doc.39-3 at 28; 77–78; Doc. 39-4 at 26–27]; that he was not a person in a position of

trust and that the victim was not under his "care, custody or control," *see* [Doc. 39-3 at 74; Doc. 39-4 at 24–25]; and that petitioner's conduct was merely "some form of regrettable online fantasizing."  [Doc. 39-4 at 31].  Thus, the undersigned concludes that petitioner is unable to show a reasonable probability that the outcome of the proceeding would have been different but-for counsel's error.

### 4. Defense counsel made a motion for acquittal, and petitioner cannot show that defense counsel's performance in this regard was unreasonable.

Next, petitioner argues his counsel was ineffective by failing to make a motion for judgment of acquittal concerning the lack of evidence of "care, custody or control" for counts 1–3, 5–9, and 11–13.  [Doc. 106-1 at 2 ¶ 4].  Simply put, defense counsel made a motion for acquittal on these counts which included questioning whether the state had shown that the victim was in the care, custody or control of petitioner.  [Doc. 39-3 at 65–67].  The Court rejected that motion.  To the extent petitioner's argument is that the motion for acquittal should have focused more on the "care, custody or control" argument rather than focusing on the argument that the crime required the defendant and victim be physically present at the same location, the decision to focus on the latter is clearly the type of strategic decision which *Strickland* holds is "virtually unchallengeable." *Strickland*, 466 U.S. at 690.  Petitioner has presented nothing to overcome the presumption that this decision was made in the exercise of reasonable professional judgment.

### 5. Petitioner is unable to meet the performance prong of *Strickland* regarding defense counsel's lack of post-trial motions.

Next, petitioner states that "Defense counsel failed to file any post-trial motions." [Doc. 106-1 at 2 ¶ 5].  In his response to the Motion, petitioner elaborates:

> Defense counsel filed no post-trial motions.   The petitioner has been informed by numerous attorneys that this is quite rare.  If the council (sic) did not believe sexual exploitation was in the indictment at a minimum the deficiency should have been addressed within ten days post-trial. . .

[Doc. 116 at 23–24].  Similarly, petitioner argues that his counsel was ineffective for failing to object to the jury instructions for Count 1; specifically, he contends that counsel should have objected to Count 1 including sexual exploitation.   [Doc. 106-1 at 2, ¶ 6].   As discussed above, it appears that defense counsel mistakenly believed that "sexual exploitation" was not included in the indictment for Count 1, and petitioner is able to meet the first prong of *Strickland* as to that basis for ineffective assistance.   However, sexual exploitation was included in Count 1 of the indictment.   As petitioner has directly challenged this point as part of Ground Five of his petition, it is discussed more fully above.  Because the undersigned finds there was not a valid basis for such an objection, petitioner is unable to show either the performance or prejudice prong of *Strickland* as to his claims that defense counsel should have filed a post-trial motion challenging this charge or that defense counsel should have objected to the jury instructions on the issue of sexual exploitation.

### 6. Because the undersigned concludes there was no confrontation clause violation, defense counsel did not act unreasonably in failing to object to the same.

Next, petitioner argues that his counsel was ineffective by "fail[ing] to object to surrogate testimony against the defendant concerning Count 10."  [Doc. 106-1 at 2, ¶ 7]. Petitioner cites the same underlying evidence as Ground Four, and argues that his counsel was ineffective by failing to object to Sergeant Swiger's testimony.  [Doc. 116 at 19].  As set forth above, petitioner is unable to point to any testimony or evidence which violated the confrontation clause, and the undersigned therefore finds that defense

31

counsel's failure to object to Sergeant Swiger's testimony was not unreasonable.  Further, even if petitioner could show that defense counsel's lack of an objection fell below an objective standard of reasonableness, he still could not meet the second prong of **Strickland**, as petitioner himself concedes that "[t]he reliability of the testimony Swiger provided from the testimonial statements and evidence investigated by McCord are not at question."  [Doc. 94-3 at 44].  Petitioner is clearly unable to show that his counsel was ineffective as to this ground.

### 7. Petitioner cannot show defense counsel acted unreasonably in not addressing the timeline of petitioner's time in the casino.

Next, petitioner argues his counsel was ineffective because counsel "suppressed" evidence that petitioner "was not at a hotel origin at the time of an email from Count 10." [Doc. 106-1 at 2 ¶ 8].  More specifically, he contends that the video surveillance of petitioner at the casino stopped "a full 5 hours prior to the email in a casino hotel full of video cameras."  [Doc. 94-3 at 44].  He argues that defense counsel failed to argue that "the state could not explain how the defendant left the hotel or what time he checked out in a casino hotel full of video cameras."  [Id.].

In his testimony at trial, petitioner stated he did not send the email in Count 10 and questioned whether he was at the hotel at the time the email was sent:

Q.    Which of these emails did you not send?

A.    Well - - -

Q.    Go ahead, if you're able to.

A.    It's listed as Count 10, the sexual picture thing, was sent at like six in the morning or something.  It looks like a spam email to me.  I didn't send the thing.  I wasn't even there at the hotel at the time.  I'd stayed there but I wasn't there at six, or I don't know the time, seven or so it was sent.  I did not send that.

[Doc. 39-3 at 77].  Although in cross examination of Lieutenant Swiger, defense counsel raised the point that the police could not say that the email in Count 10 originated from petitioner's computer, defense counsel shifted to focus on the issue of physical presence:

> Q.     . . . so I'm gonna assume and let's assume for argument's sake that your investigation is correct about where this one comes from at the Mardi Gras Hotel and Dr. Herto at some relevant point in time is a guest there, aside from that one in Count 10, I'm assuming there is no belief or contention that this young lady is there at the hotel?
>
> A.     No, I have no evidence of that.
>
> Q.     She's denied that.
>
> A.     I've never asked her that question, but I would say she's not there.
>
> Q.     Is there any evidence of any type that when any of these email transmissions are sent that Dr. Herto and this young lady, Ms. ____, are physically in the same location?
>
> A.     During the emails?
>
> Q.     Correct, during the transmission of these email messages.
>
> A.     No.
>
> Q.     No?
>
> A.     No, sir.
>
> Q.     In fact, it's probably a very safe and very fair presumption that he is in the comfort of his home for most of them and maybe his office for one or two, maybe not, and she's in the confines and comfort and security of her own home.
>
> A.     That's a fair assumption, yes.

[Doc. 39-3 at 61–62].  Then, in closing arguments, defense counsel argued that despite admitting to sending the other emails, "he denies this one right from the beginning to the State trooper."  [Doc. 39-4 at 26].  Defense counsel argues:

> Let's start with the simple part of this.  Does the State prove to you beyond a reasonable doubt that he actually sends this?  Well, there's a lot of circumstantial evidence to suggest that he has.  He's sent a lot of other God-awful emails with the same email address, AC_Rich.  But there's no proof it comes from his computer at all.  There's no proof who sends it.  There is evidence there's more owners and users of this AC_Rich email and that's not investigated.  That's not looked into at all by the State in this case.

[Id.].

Upon review of the trial transcript, the undersigned concludes petitioner's defense counsel acted reasonably.  Notably, the prosecution did not utilize the video surveillance to establish petitioner was at the casino, and thus it is questionable whether "us[ing] evidence that strangely the state stopped video surveillance a full 5 hours prior to the email in the casino," [Doc.94-3 at 26], would support petitioner's argument as it would also involve highlighting to the jury video evidence that he had been at the casino. Defense counsel had already raised the point, admitted by Lieutenant Swiger, that the police could not say for sure the email had originated from petitioner's computer, the jury had heard that multiple people besides petitioner had access to this computer, and that unlike the other emails in the case, petitioner had consistently denied sending this email from the beginning.  As set forth above, defense counsel already emphasized his argument that the state could not prove petitioner sent this.  With the benefit of hindsight, defense counsel may have chosen to approach this count differently, but the undersigned finds that the decision not to focus on the timeline of the video surveillance did not fall below an objective standard of reasonableness.

### 8. Petitioner is unable to show that petitioner was unprepared for the suppression hearing.

Next, petitioner argues his counsel was ineffective by failing to prepare for a pre-trial suppression hearing and by failing to object to unlawfully obtained audio recordings.

Specifically, petitioner refers to an audio recording of Lieutenant Swiger interviewing petitioner in his home. [Doc. 116 at 25]. At trial, Lieutenant Swiger testified about this interview and its contents, and the state introduced an audio recording of the interview into evidence. *See* [Doc. 39-3 at 50–53].

In his response to the Motion, petitioner clarifies that he contends defense counsel "failed to suppress the evidence at a pre-trial suppression hearing on January 26, 2015." [Doc. 116 at 25]. Defense counsel had filed a motion to suppress, and argued that the judge who issued the search warrants was biased because of a potential conflict of interest based on his wife and daughter's real estate business, which had had dealings with petitioner. *See* [Doc. 39-18 at 48–50]. Defense counsel argued that the judge should have had some kind of system in place to communicate any fiduciary or agency relationships the wife's real estate business was involved in, and that any evidence gained via the affected search warrants needed to be suppressed. [Id.]. As part of this hearing, defense counsel called as witnesses the judge who had signed those warrants as well as that judge's wife and daughter and conducted a thorough examination attempting to support his arguments. Despite this, the court determined the motion should be denied. A review of the transcript of that hearing reveals nothing to indicate that defense counsel was unprepared—an attorney is not deemed ineffective simply because his motion was unsuccessful.

Alternatively, petitioner refers to the recording as being unlawfully obtained, [Doc. 106-1 at 2], and in his response to the Motion alleges that he was not provided any ***Miranda*** rights prior to the interview. [Doc. 116 at 25]. He contends that it was unreasonable for his attorney to fail to object to this recording as a result. [Id]. When a

subject is interrogated while in custody, a **Miranda** warning is required.   **Miranda v. Arizona**, 384 U.S. 436, 444 (1966).   "But so long as a defendant is not 'in custody,' then statements made during an interrogation remain admissible, even if the defendant were not given **Miranda** warnings." **United States v. Leggette**, 57 F.4th 406, 410 (4th Cir. 2023).   Here, the recording in question was part of an interview of the petitioner that Sergeant Swiger conducted inside the defendant's home.   Assuming, *arguendo*, no **Miranda** warning was issued, none would have been required.  Petitioner has not shown that there was any valid basis for suppressing or objecting to this recording, and as such is unable to show that defense counsel's performance was unreasonable in this respect.

9. **Petitioner is unable to show his counsel's individual errors constituted ineffective assistance, and he cannot therefore show that they were "cumulative error."**

Finally, petitioner argues his counsel's cumulative errors prejudiced the defendant in the eyes of the jury.  [Doc. 106-1 at 2 ¶ 10].  "[I]neffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively. . . ." **Fisher v. Angelone**, 163 F.3d 835, 852 (4th Cir. 1998).  "A cumulative ineffective assistance of counsel claim is not a basis for habeas relief because matters that are not unconstitutional individually cannot be added together to create a constitutional violation." **Dodson v. United States**, No. 1:08-CR-53-2, 2013 WL 4401385, at *8 (N.D. W.Va. Aug. 15, 2013) (Bailey, J.) (citing **United States v. Hicks**, 307 Fed. App'x 758, 763 (4th Cir. 2009); **Fisher**, 163 F.3d at 853)).  The undersigned has found that defense counsel's alleged errors did not constitute ineffective assistance, and they thus cannot be "added together" to show cumulative error.

**F. Petitioner's Motion for Summary Judgment should be denied for reasons already set forth above.**

In his Motion for Summary Judgment, petitioner argues that he should be granted summary judgment for Grounds 3-1 and 5 of his petition, which both attack Count 1 of his indictment.  [Doc. 117 at 1–2].  Specifically, he argues that emails alone are insufficient to constitute an attempt and that the trial court has already found that the indictment did not charge petitioner with sexual exploitation.  Turning first to Ground "3-1," the petition argues that sending electronic communications alone cannot be considered an "attempt."  As set forth above, the undersigned finds that the WVSCA's ruling was not "objectively unreasonable," and therefore summary judgment in favor of petitioner is not warranted.  Likewise, as explained more fully above, the undersigned finds that sexual exploitation was charged in the indictment and this argument is without merit.

## V.    RECOMMENDATION

For the reasons stated above, the undersigned recommends that Respondent's Motion for Judgement on the Pleadings [**Doc. 109**] be **GRANTED**, that Petitioner's Motion for Summary Judgment [**Doc. 117**] be **DENIED**, and that the amended petition [**Doc. 106**] be **DENIED** and the case **DISMISSED** with prejudice.  Further, as petitioner has filed his response to the Motion for Judgment on the Pleadings, the undersigned recommends that petitioner's Notice of Intent to Reply [**Doc. 113**] be **DENIED AS MOOT**.

Within fourteen (14) days after being served with a copy of this report and recommendation, the petitioner may file with the Clerk of Court **specific written objections identifying those portions of the recommendation to which objection is made and the basis for such objections**.  A copy of any objections shall also be submitted to the United States District Judge.  Objections shall not exceed ten (10)

typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

       **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

       The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.  In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

       **DATED**: August 12, 2024.

*/s. James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE